UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

LENDEL SAINT-FORT

        Plaintiff;

    v.

CITY OF NEW YORK; JONATHAN SUERO; SERGEANT PURRIER; MICHAEL LUGO; and POLICE OFFICERS JOHN & JANE DOE 4-10,

        Defendants.

22-cv-6879 (NRM) (MMH)

**Memorandum & Order**

NINA R. MORRISON, United States District Judge:

On February 15, 2023, Defendant City of New York filed a letter motion to stay all proceedings in this action pending the resolution of an investigation by the Civilian Complaint Review Board into Plaintiff Lendel Saint-Fort's allegations against the individual defendants to this action. ECF No. 16. Plaintiff opposed. ECF No. 17. After hearing oral argument on the motion and considering the parties' letter briefs, the Court denied the City's motion from the bench on February 24, 2023 with leave to re-file. This written opinion follows.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lendel Saint-Fort ("Plaintiff") filed this § 1983 action on November 10, 2022. ECF No. 1. In his complaint, Plaintiff alleges that on June 4, 2022, various

1

New York City police officers tased and wrongly arrested Plaintiff while ticketing him in front of his apartment building for double-parking his car. *Id.* at 3. Plaintiff alleges that although he was required to appear in criminal court, all charges against him were dropped when he accepted an Adjournment in Contemplation of Dismissal. *Id.* at 4. Plaintiff brings various state and constitutional claims against the City of New York, three named individual officers, and seven John and Jane Doe officers. *Id.* at 1. Plaintiff served all named defendants on December 1, 2022. ECF No. 13.

On December 19, 2022, the Office of Corporation Counsel for the City of New York ("Corporation Counsel") entered an appearance in this action as counsel for defendant City of New York and requested an extension of time to file an answer, *see* ECF Nos. 14; 15, which Magistrate Judge Henry granted on December 28, 2022. Corporation Counsel did not, however, enter an appearance on behalf of the individual defendants. *See* ECF No. 14.

On February 15, 2017, the City, through Corporation Counsel, filed a letter motion requesting a stay of this action. ECF No. 16 at 1. The City informed the Court that the Civilian Complaint Review Board ("CCRB") is currently investigating the events underlying this case and argued that a stay pending the resolution of the CCRB proceeding was necessary because, pursuant to General Municipal Law § 50-k(2), Corporation Counsel had not yet determined whether it could legally represent the individual officers in this proceeding, and the outcome of the CCRB's investigation "may" affect Corporation Counsel's decision. *Id.* at 1-2. The City further argued that, as a practical matter, staying this action was prudent because

2

both the law enforcement privilege and the deliberative process privilege would shield from discovery certain materials generated by the CCRB while its investigation was pending. *Id.* at 2.

Plaintiff filed a response on February 17, 2023, opposing the stay. ECF No. 17 at 1. Plaintiff first argued that Corporation Counsel can easily make a determination based on the information it currently has as to whether it can represent the individual defendants under N.Y. Gen. Mun. L. § 50-k(2) without the benefit of a report from the CCRB's investigation, which remains far from complete at this juncture. *Id.* Plaintiff further argued that the privileges cited by the City in its motion, if applicable, would at most shield a small number of documents relative to the "trove" of material that the City possesses regarding Plaintiff's allegations. *Id.* at 2.

## **LEGAL STANDARD**

A district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). To that end, district courts have the discretionary authority to stay cases when the "interests of justice so require." *Jackson v. Johnson*, 985 F. Supp. 422, 424 (S.D.N.Y. 1997). *See also Okoli v. County of Nassau*, No. 15-cv-0701, 2015 WL 8207496, at *2 (E.D.N.Y. Dec. 7, 2015) ("Courts routinely stay civil proceedings, postpone civil discovery, and impose protective orders to manage their cases.").

However, staying a case is an "extraordinary remedy," *Jackson*, 985 F. Supp. at 424, and whether such a remedy is appropriate will depend greatly on the circumstances of the particular action. As a general matter, a defendant who seeks a stay "bears the burden of establishing its need," and "absent a showing of undue prejudice upon" the defendant, "there is no reason why plaintiff should be delayed in its efforts to diligently proceed to sustain its claim." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97 (2d Cir. 2012) (citations omitted).

## ANALYSIS

The City has not met its high burden of demonstrating that a stay of this Section 1983 action is in the interest of justice or that denying the requested stay would unduly burden any defendants to this action.

As a threshold matter, the City cites no cases—and the Court has found none—in which a court has indefinitely stayed a civil action because one of the parties had not yet acquired representation.[1] Nor does the City cite any cases in which a court concluded that Corporation Counsel must make a representation determination under N.Y. Gen. Mun. L. § 50-k(2) based on a recommendation from

---

[1] In fact, the City's position is even further afield than a scenario in which an unrepresented party asks the Court to stay a case to give the party additional time to obtain legal representation. Because Corporation Counsel at this point only represents the City in this action, it cannot formally move for a stay on behalf of the unrepresented individual defendants. The Court has certainly found no case in which a court in a civil action has granted a motion filed by one party on behalf of a second party—who has not yet appeared and who may end up being the first party's adversary—for an indefinite stay.

4

the CCRB. N.Y. Gen. Mun. L. § 50-k(2) requires the City to "provide for the defense" of an officer in a § 1983 action if that officer "was acting within the scope of his public employment and in the discharge of his duties" at the time of the underlying events and "was not in violation of any rule or regulation of his agency at the time the alleged act or omission occurred."[2] While N.Y. Gen. Mun. L. § 50-k(5) states that if the events that give rise to the civil action are "also the basis of a disciplinary proceeding by the employee's agency against the employee," Corporation Counsel "may" decline to represent an officer until the disciplinary proceeding "has been resolved," nothing in the statute says that Corporation Counsel "must" do so, nor does the statute contemplate staying the parallel federal civil action pending the resolution of the disciplinary proceeding.[3]

Indeed, even if this Court were to grant the requested stay, the outcome of the

---

[2] In its February 15, 2023 letter, Corporation Counsel initially informed the Court that it was still determining whether the individual officers in this action were "acting within the scope of [their] public employment" at the time of the events in question. ECF No. 16 at 2. At oral argument on February 24, 2023, however, Corporation Counsel clarified that this requirement of N.Y. Gen. Mun. L. § 50-k(2) was not meaningfully at issue, since the individual defendants in this action were on-duty officers who ticketed Plaintiff for his double-parked car before allegedly arresting and tasing him. Rather, Corporation Counsel informed the Court that the "pertinent inquiry" is whether the individual officers acted in violation of any departmental rule or regulation.

[3] In any event, the CCRB's investigation would likely not be "a disciplinary proceeding by the employee's agency" within the meaning of N.Y. Gen. Mun. L. § 50-k(5), since the CCRB is not part of the New York City Police Department. Rather, the CCRB is "an impartial agency that has been independent of the police department since 1993." See Civilian Complaint Review Board, *Frequently Asked Questions*, https://www.nyc.gov/site/ccrb/about/frequently-asked-questions-faq.page (last visited April 3, 2023 at 10:32 AM). In its motion, the City does not argue that the CCRB's investigation would qualify as a "disciplinary proceeding" under N.Y. Gen. Mun. L. § 50-k(5). See ECF No. 16.

5

CCRB's pending investigation into the individual defendants' actions would not necessarily be dispositive of the issue of their representation.  At oral argument, Corporation Counsel informed the Court that while the CCRB's findings may carry great weight in the City's decision whether or not to represent them, the City has no *per se* rule as to how the outcome of a CCRB investigation impacts the City's representation determination under N.Y. Gen. Mun. L. § 50-k(2), and that Corporation Counsel might represent or decline to represent the individual officers in this action regardless of the CCRB's findings.

Corporation Counsel further asserts that staying this action while it assesses the question of whether it can represent the individual defendants may save all the parties time and expense later on.  It argues that if Corporation Counsel represents the officers now but later concludes that the officers were acting in violation of a departmental rule or regulation, Corporation Counsel would be conflicted off the action altogether — requiring both the City and the individual defendants to find outside counsel.  ECF No. 16 at 2.  Corporation Counsel is correct in its description of its ethical obligations.  *Cf. Mercurio v. City of New York*, 758 F.2d 862, 864 (2d Cir. 1985) ("A further limit on his power to represent such individual defendants is the potential conflict of interest arising if both the City and the individuals are named as defendants in an action; if such a conflict exists . . . Corporation Counsel, whose primary function is to represent the City, cannot represent the individuals.").  However, indefinitely staying this proceeding is not the only solution to that problem, nor the most appropriate one.  Rather, the individual defendants to this action can

simply enter an appearance through their own counsel (either through the Police Benevolent Association, or privately retained) while Corporation Counsel determines whether it can represent the officers under N.Y. Gen. Mun. L. § 50-k(2). If Corporation Counsel later answers that question in the affirmative, then the officers' retained attorneys can withdraw from the case and Corporation Counsel can proceed to represent all defendants with little risk of conflict. The Court recognizes that finding able representation can be a burdensome process, particularly for those who (unlike the defendant officers here) are not part of a union that has the resources to provide legal services to its members.[4] But finding counsel is a reality for all defendants in civil actions, and the Court does not conclude that it is "undu[ly]" prejudicial to these defendants to decline to indefinitely stay the action in the meantime. *Louis Vuitton*, 676 F.3d at 97.

Indeed, the prejudice cuts the other way. Plaintiff to this action, as with all litigants, has a strong interest in "diligently proceed[ing]" with his case. *Id.* Depending on the complexity of the underlying events, however, a CCRB investigation can be a time-consuming and protracted process. On its website, the CCRB states that those investigations which can be done "quickly" are completed in "a few months." More complicated cases, however "take longer," depending on "the

---

[4] At oral argument, Corporation Counsel averred that it did not know whether the individual defendants could retain counsel in this action through their union. As a general matter, however, the website for the Police Benevolent Association of the City of New York states that one of the PBA's core functions is to "provide[] legal services and representation" to its members. Police Benevolent Association of the City of New York, *Who We Are*, https://www.nycpba.org/about-the-pba/who-we-are/ (last visited April 3, 2023 at 10:34 AM).

7

availability of witnesses and the complexity of the incident, [and] the number of alleged victims and subject officers."[5] In the present action, Plaintiff is proceeding against ten officers, including seven whose identities Plaintiff does not yet know. Moreover, Plaintiff's counsel informed the Court during oral argument that Plaintiff, who did not himself initiate the CCRB investigation, has not yet been contacted for an interview.

The City argues that Plaintiff is not prejudiced by the stay because he would still have ample time to identify additional defendants to this action, since the three-year statute of limitations period began to run less than one year ago. Suppose, however, that the CCRB's investigation takes the better part of Plaintiff's remaining limitations period. It is true that if stay is granted, the Court may have the authority to toll the statute of limitations with respect to the John Doe defendants in the meantime. *Jewell v. County of Nassau*, 917 F.3d 738, 740 n.1 (2d Cir. 1990) (noting that federal courts applying a state's statute of limitations in a Section 1983 action must also apply the state's tolling rules, and New York law provides for tolling when the action is stayed by court order (citing N.Y. C.P.L.R. § 204(a)). Alternatively, if Plaintiff identifies a John Doe defendant after the original limitations period has lapsed, Plaintiff may be able to proceed against him through the doctrine of relation back. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) ("Generally, John Doe pleadings cannot be used to circumvent statutes of limitations

---

[5] Civilian Complaint Review Board, *Frequently Asked Questions*, https://www.nyc.gov/site/ccrb/about/frequently-asked-questions-faq.page (last visited April 3, 2023 at 10:35 AM).

8

because replacing a John Doe with a named party in effect constitutes a change in the party sued. John Doe substitutions, then, may only be accomplished when all of the specifications of Fed. R. Civ. P. 15(c) are met." (citation and internal quotation marks omitted)). Either way, however, if Plaintiff attempts to proceed against a John Doe defendant after the original three-year limitations period lapses, that would require additional motion practice before the Court — an expenditure of both the Court's and the parties' resources (which may be considerable, if the motion is contested) that can be avoided by simply denying the City's request for a stay and allowing discovery to proceed. *See Okoli,* 2015 WL 8207496, at *2 ("Courts routinely stay civil proceedings . . . *to manage their cases.*" (emphasis added)).[6] Nor can Corporation Counsel, as a condition of granting the stay, waive any statute of limitations defense on behalf of a John Doe defendant whom it does not currently represent.

The City's final argument for staying this action—that certain documents are currently protected by the law enforcement and deliberative process privileges—is also unavailing. As a basic matter, it is unclear whether and to what extent either of these privileges would apply to particular documents in this case. The law

---

[6] If Plaintiff lost his constitutional claims against the John Doe defendants due to a lapse in the statute of limitations, he could still presumably proceed with his state law claims against the City of New York for injuries caused by those unknown officers under the doctrine of *respondeat superior*. However, a Section 1983 constitutional claim against an individual defendant, which offers the possibility of punitive damages, requires a plaintiff to prove the "personal involvement" of that defendant in the deprivation of the plaintiff's constitutional rights. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Punitive damages are generally unavailable for claims against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259-60 (1981).

enforcement privilege is a "qualified" privilege meant to "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re The City of New York*, 607 F.3d 923, 940-41 (2d Cir. 2010). If a court concludes that a particular document implicates the law enforcement privilege, it must then balance the public interest in non-disclosure against the litigant's interest in getting the document through discovery. *Id.* at 948. The deliberative process privilege is a narrow privilege that permits agencies to shield from disclosure in-house drafts of materials that are "predecisional." *United States Fish and Wildlife Service v. Sierra Club, Inc.*, 141 S. Ct. 777, 785-86 (2021).

These privileges may apply to certain documents in this action, or they may not. Even if they do apply to certain documents, however, the Court sees no reason why discovery could not otherwise proceed — *i.e.*, through the exchange of initial disclosures and at least initial depositions of the officers involved, once they are represented, with supplemental discovery as appropriate once the CCRB proceeding has concluded and any discoverable documents from it have been reviewed and disclosed. Similarly, internal CCRB reports might be privileged prior to the conclusion of its investigation,[7] but any external materials on which the CCRB relies

---

[7] Local Rule 83.10(e)(1)(B) also provides helpful guidance. Though not binding on actions brought in the Eastern District of New York, the Rule lays out discovery guidelines when "the incident or the conduct of defendants involved in the incident is the subject of an ongoing CCRB investigation." Local Rule 83.10(e)(1)(B). In such a circumstance, discovery of "[a]ny CCRB records . . . shall

should, as a threshold matter, likely be discoverable. In any event, the Court declines to determine the applicability and scope of these privileges in a vacuum. Simply put, discovery disputes are best addressed through negotiations between the parties and motions to quash rather than through an indefinite stay of the entire action.

## CONCLUSION

The Court is not without sympathy for the position that Corporation Counsel often finds itself in under N.Y. Gen. Mun. L. § 50-k(2), since small nuances in the facts of a case can mean the difference between the City vigorously representing an officer in a civil rights action and the City defending crossclaims in the action from that same officer. The Court has no doubt that Corporation Counsel finds itself between a rock and a hard place at this juncture and made its request for a stay in good faith, and solely to ameliorate any potential conflict down the road. Indeed, it was for that very reason that the Court granted the City leave to re-file a motion to stay the case for a limited period if it can assure the Court that such a stay would be short and would not prejudice Plaintiff. *See* ECF Minute Entry, February 24, 2023.

However, for the reasons outlined above, the fact that Corporation Counsel has not yet determined whether it will represent the individual defendant police officers who may be facing a parallel CCRB investigation simply does not merit the

---

be suspended" until 30 days after the investigation is complete. *Id.* There is no indication that the Rule's contemplated stay applies to other discoverable documents, however, and certainly not to the entire action.

11

"extraordinary remedy" of an indefinite stay of Plaintiff's Section 1983 action. *See Jackson*, 985 F. Supp. at 424. Defendant City of New York's motion is therefore denied.

SO ORDERED.

       /s/ NRM                  
NINA R. MORRISON
United States District Judge

Dated: April 4, 2023
       Brooklyn, New York